THE STATE OF MISSOURI, Defendant in Error, *v.* THOMAS CONNELL, Plaintiff in Error.

1. *Practice, criminal — Errors — What must appear from bill of exceptions.* — In a criminal cause the objection that it does not appear that the court ever made an order directing a grand jury to be summoned, if not brought to the attention of the lower court, is raised in the Supreme Court too late. In criminal cases such errors as appear upon the face of the record, or such as may be taken advantage of by motion in arrest or by writ of error, will be noticed in the Supreme Court, as a matter of course. But as to exceptions taken in the progress of the trial, and as to motions for new trial and in arrest, which can become a part of the record only by bill of exceptions, the same rules are applicable as in civil cases, and in order to be reviewed in the Supreme Court they must be brought up by bill of exceptions.

2. *Practice, criminal — Grand jury — Adjourned term.* — Under section 13, p. 1083, Wagner's Statutes, a grand jury may be summoned at an adjourned term.

3. *Practice, criminal — Grand jury, summoning of — Objections to array — Statute, construction of.* — The objection in a criminal cause, that no order was made by a Circuit Court for summoning a special grand jury, is, in effect, a challenge to the array, and under the statute (Wagn. Stat. 1081, §§ 2, 3) is not permissible. And the rule is not shaken by the fact that the accused was not present at the session of the grand jury and had no opportunity to make his objections or exercise his right of challenge.

4. *Practice, criminal — Civiliter mortuus.* — A criminal may be convicted of murder committed while in confinement in the penitentiary under sentence of imprisonment for life. (Wagn. Stat. 515, § 23; *id.* 989, §§ 14, 15.)

5. *Practice, criminal — Weight of evidence — Verdict.* — In criminal cases the Supreme Court will not interfere on the ground that the verdict is against the weight of evidence, unless it was on that account manifestly unjust.

*Error to Cole Circuit Court.*

*H. Flanagan & G. T. White,* and *H. C. Ewing & A. M. Lay,* for plaintiff in error.

I. The grand jury was not lawfully summoned. It met at an adjourned term, but without any order from the court directed to

the sheriff and entered on the minutes of the court. (Wagn. Stat. 1083, § 13 ; State v. Barnes, 20 Mo. 413.) Without such steps the indictment is a nullity. This fact appears on the face of the record, and may be taken advantage of at any time. (Chase v. State, 1 Spen., N. Y., 218 ; Porter v. State, 23 Miss. 77–8 ; Stokes v. State, 24 Miss. 621 ; State v. Brown, 5 Eng., Ark., 78 ; Doyle v. State, 17 Ohio, 222 ; McGuire v. People, 1 Park. Crim. Rep. 48 ; McClosky v. People, 5 Park Crim. Rep. 308 ; People v. McKay, 18 Johns. 212 ; State v. Lightbody, 38 Me. 200 ; State v. Harden, 2 Rich., S. C., 533 ; Miller v. State, 33 Miss. 356 ; McMellen v. State, 8 Sm. & M. 587.) Defendant could not give jurisdiction by consent or failure to object. (State v. Mansfield, 41 Mo. 470.)

The provision of our statute (Wagn. Stat. 1081, §§ 2, 3), with the construction sought to be applied to it, would work not only a hardship in many cases, but would be exceedingly harsh and inhuman in the case at bar. When this body of men who preferred the bill against the defendant convened, he was a convict in the Missouri penitentiary, knew nothing of them or their proceedings, and could not be present to object.

II. The sentence of death pronounced against the defendant by the Circuit Court of Boone county having been commuted by the governor, the warden was required by law to confine him in the penitentiary for life. (Wagn. Stat. 785, § 26.) There was no authority in law for taking him out of the custody of the warden for a moment, except to testify as a witness in certain cases, or for the purpose of inquiring into the legality of his confinement. And he certainly did not appear voluntarily. The Circuit Court under the law could acquire no jurisdiction over the person of the defendant, and as a matter of fact never did acquire any.

III. Admitting that he might be lawfully tried, the second sentence could take effect only at the expiration of the first, or when he was pardoned by the executive. The judgment of the Circuit Court of Boone county, as commuted or changed by the order of the governor, requires the defendant to remain in the custody of the warden for life. This judgment and the executive

order are still in full force. Can another court of no higher jurisdiction direct its sheriff to take him out of the custody of the warden, where under the law he rightly belongs ? Can the warden, under the law and under the order of the governor, surrender him to the sheriff for any such purpose? We submit that in the absence of any statute authorizing it, it cannot be done. (*Ex parte* Brunding, 47 Mo. 255 ; 1 Bish. Crim. Law, § 731 ; Bish. Crim. Pr., § 878.) The defendant had the right to be heard by himself and counsel. (Const. Mo., art. I, § 18.)

IV. In criminal cases it is well settled that this court will reverse the judgment and grant a new trial if the verdict is against the evidence. (State v. Mansfield, 41 Mo. 470 ; State v. Marshall, 47 Mo. 378 ; State v. Bird, 1 Mo. 585 ; State v. Packwood, 26 Mo. 340.)

*A. J. Baker*, Attorney-General, for defendant in error.

I. The right to try criminals for offenses committed while in prison under sentence, is clearly recognized by the statute. (Wagn. Stat. 389, §§ 14, 15 ; *Ex parte* Brunding, 41 Mo. 255.)

II. No objection was made to the manner of summoning the jury in the court below, and it is now too late to raise that point here. (State v. Bleekley, 18 Mo. 428 ; State v. Marshall, 36 Mo. 400 ; State v. Samuels, 3 Mo. 68 ; State v. Welch, 33 Mo. 34.) Nor is this point raised by a motion in arrest or for new trial, and this must be done before this court will pass upon it. (State v. Marshall, *supra.*)

III. The court will not disturb the judgment where, from the evidence, the finding might have been either way, as the surrounding circumstances incline. (McKnight v. Wells, 1 Mo. 14 ; Kizer v. Wilkes, 5 Mo. 519 ; Steel v. McCutchens, *id.* 522 ; Stewart v. Small, *id.* 525 ; Church v. Fagin, 43 Mo. 123.)

*J. W. Moore*, for defendant in error, in addition to points urged by the attorney-general, contended that any objection to the irregularity in the impaneling or array of the grand jury must be made before the defendant enters his plea to the merits on the indictment, that it was too late to object after verdict, and cited Whart. Crim. Law, §§ 468, 471–2, and cases cited ; People

v. Griffin, 2 Barb. 427 ; State v. Borroum, 25 Miss. 203 ; Vanderhook v. State, 12 Texas, 252 ; 3 Wend. 314 ; 11 Ala. 57 ; State v. Rand, 33 N. H. 16. Counsel claimed that under some authorities any objections, to be available to the defendant in the matter of summoning and impaneling the grand jury, must be made before the jury is sworn. (Wagn. Stat. 1081, § 3 ; State v. Bleekley, 18 Mo. 428 ; State v. Marshall, 36 Mo. 400 ; State v. Welch, 33 Mo. 33.)

*F. N. Judson,* for defendant in error.

The convict forfeits his civil rights and privileges only as a part of his punishment. The forfeiture of his privileges is not an exemption from his responsibilities. (Wagn. Stat. 51, § 989.) If the punishment of the new offense is of less degree, as in case of larceny or assault by a murderer, the lesser would necessarily be merged in the greater.

The plea of appellant is analogous to the common-law plea of *autrefoit attaint.* (4 Shars. Blackst. 336.) Attainder utterly annihilated all civil rights. Civil death was complete, yet the plea never gave exemption from punishment except where the new punishment was of less degree, and so would be unavailing. Thus, an attainder for a felony was no bar to an indictment for treason. (17 Metc., Mass., 800.)

WAGNER, Judge, delivered the opinion of the court.

The record shows that the plaintiff in error is a convict in the State penitentiary ; that he committed a willful murder in Boone county, for which he was tried, condemned, and sentenced to be hung ; and that upon certain representations his punishment was commuted by the governor to imprisonment for life in the State penitentiary. After he was imprisoned in the penitentiary he killed Lafayette Burns, a fellow-convict, for which killing he was indicted in the Cole County Circuit Court, and upon his trial was found guilty of murder in the first degree, and he has brought his case to this court by writ of error.

The main points relied on for a reversal are the following : first, that the grand jury was illegally impaneled ; second, that

the Circuit Court had no jurisdiction of the case; and third, that the verdict is against the weight of evidence.

The indictment was found at an adjourned term of the Circuit Court, and the objection taken is that it does not appear that the court ever made an order directing a grand jury to be summoned. The record entry describes the beginning of the court, the time and place where held, and then continues thus: "Among other proceedings had were the following, to-wit: Now at this day come the following named persons as a special grand jury," etc., naming a full and regular panel. Then follows an entry of the returning of the grand jury into court with the indictment. The objection now made was not brought to the attention of the court below, and the point is raised here for the first time.

In criminal cases, such errors as appear upon the face of the record, or such as may be taken advantage of by a motion in arrest or by writ of error, will be noticed here as a matter of course; but as to exceptions taken in the progress of the trial, and as to motions for a new trial and in arrest, which can become a part of the record only by bill of exceptions, the same rules are applicable alike in criminal and civil cases. (State v. Marshall, 36 Mo. 400.) The statute provides that if any offense be committed or discovered during the sitting of any court having jurisdiction thereof, after the grand jury attending such court shall be discharged, such court may, in its discretion, by an order to be entered on its minutes, direct the sheriff to summon another grand jury. (Wagn. Stat. 1083, § 13.) Under this section a grand jury may be summoned at an adjourned term, as it is a mere continuation of the regular term. (State v. Barnes, 20 Mo. 413.)

The only defect that exists in the record is its failure to show that any order was made by the court for summoning a special grand jury. The Circuit Court is a court possessing general and original criminal jurisdiction, and where presumptions are indulged they are to be in favor of its proceedings. It must be borne in mind that our practice in reference to summoning and impaneling grand juries is regulated exclusively by the statute. The practice. that existed by the common law, and that has obtained in some of the States where the common-law rules have been adopted,

furnish no precedent to guide us. In order that verdicts should not be set aside and new trials granted for frivolous and unsubstantial reasons, in the matter of the selecting of a grand jury, the Legislature interposed, and declared that challenges should be made in certain specified cases only.

The statute provides that " any person held to answer a criminal charge may object to the competency of any one summoned to serve as a grand juror, before he is sworn, on the ground that he is the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecutor, and has been summoned or bound in a recognizance as such; and if such objection be established, the person so challenged shall be set aside." (Wagn. Stat. 1081, § 2.) The third section of the same article declares that no challenge to the array of grand jurors, or to any person summoned as a grand juror, shall be allowed in any other cases than such as are specified in the section above quoted.

Under the provisions of this statute this court has decided that the illegal manner of summoning a grand jury is no ground for a plea in abatement, nor would it be any ground for a challenge to the array. (State v. Bleekley, 18 Mo. 428.) And it has been also held that a challenge to a grand juror or to the array must be made before the jurors are sworn, and can only be made for the causes stated in the statute. (State v. Welch, 33 Mo 33.)

The objection here is in the nature of a challenge to the array, as it strikes at the entire organization of the jury, and the statute positively forbids the challenge, except in certain specified cases.

It is insisted by the counsel for the plaintiff in error that this construction of the statute does manifest injustice to the accused, because he was not present and had no opportunity to make his objections or exercise his right to challenge. But he is in the precise condition of every person who is indicted, who has not been previously held upon recognizance to answer a criminal charge.

A large portion of those who are indicted have never been apprehended, and know nothing about the organization of the grand jury or their proceedings, and the first intimation that they

have of the finding of the indictment is their arrest. In all such cases the law absolutely prohibits them from challenging the grand jury. That there was the requisite number of jurors in this case, and they were sworn and impaneled, is not questioned, and under the statute and prior decisions of this court we must rule the point against the plaintiff in error.

The next question presented for our inquiry is the jurisdiction of the court. The ground is assumed that because the plaintiff in error is an inmate of the penitentiary, under sentence for life, he is not amenable to the courts of the country, and is not punishable for his criminal acts while in actual confinement. This argument is based on the idea that, as he is civilly dead, he is not responsible for anything he may do while his liability continues.

The cases of *Ex parte* Myers, 44 Mo. 279, and *Ex parte* Brunding, 47 Mo. 255, have no bearing on the question presented here. The Meyers case was decided upon the statute. The Criminal Court had sentenced the defendant at one term, and then held him in custody on another indictment and tried and sentenced him at a subsequent term, and he was sent up and imprisoned on both sentences. We held that under the provisions of the statute the last conviction was wrong; that the law required that where there were two convictions they must both be obtained at the same term, and take place before the sentence is pronounced in either case.

In Brunding's case the prisoner was confined in the penitentiary and escaped and committed another crime while out, for which he was indicted, tried, convicted, and again sent to prison. When he was placed in the hands of the officers they recognized him and compelled him to serve out his unexpired term, and then held him to serve out his last sentence. This we held they had a right to do, and we maintained the doctrine that where a prisoner under an unexpired sentence commits an offense he may lawfully be convicted thereof, and that the succeeding period of imprisonment will commence on the termination of the period next preceding.

It will be perceived that both convictions were of the same grade, punishable in the penitentiary, and were for defined and

limited periods.  But had the first sentence been for life, we cannot see that it would have precluded the second conviction. The executive might have pardoned the prisoner for the first offense, and in that case he would be immediately held on the second sentence.  But the question here presented is a wholly different one.  It is whether a criminal confined for one crime, who commits another and a greater crime, to which the law affixes a severer penalty, shall escape his merited punishment.  To say that he has an entire immunity is a proposition monstrous in itself.  Notwithstanding a man may be sentenced and imprisoned for a criminal offense, he is still amenable to and under the protection of the law.  Though laboring under disabilities as to his civil rights, the law assumes over him a control and guardianship. He is criminally answerable for his acts, and he is protected from injury or violence.  The law regards him still as a living human being and as a responsible agent.  The statute declares that the person of a convict sentenced to imprisonment in the penitentiary is under the protection of the law, and any injury to his person not authorized by law shall be punishable in the same manner as if he was not sentenced or convicted.  (Wagn. Stat. 515, § 23.) The provision for punishment applies to all who commit the offense and injury, whether it be a fellow-convict or any other person.

As further authority showing that the statute clearly makes convicts responsible for crimes committed while serving their time in the penitentiary, it is only necessary to refer to the article on the treatment and conduct of convicts.  Section 14 of that act provides that whenever any convict confined in the penitentiary shall be considered an important witness in behalf of the State, upon any criminal prosecution against any other convict, he shall be brought out on *habeas corpus* to testify.  Section 15 declares that such convict may be examined, and shall be considered a competent witness against any fellow-convict for any offense committed while in prison.  (Wagn. Stat. 989, §§ 14, 15.)

These provisions all plainly show that the statute holds to accountability convicts committing crime, in the same manner as other persons.  And where a prisoner is under sentence for one crime, it is no bar to his trial, conviction and sentence for

another and higher grade of crime, committed while he is under-going imprisonment for the first. This was always the doctrine under the common law. While the courts held that the plea *autrefoit attaint*, or a former attainder, was a good plea in bar, whether it was for the same or any other felony, yet there were certain well-recognized and established exceptions to the rule, among which were that an attainder in felony was no bar to an indictment for treason, because the judgment and manner of death was different and the forfeiture was more extensive. Another exception which obtained was, that where a person attainted of any felony was afterward indicted as principal in another, in which there were also accessories prosecuted at the same time. In that case it was held that the plea of *autrefoit attaint* was no bar, but that he should be compelled to take his trial for the sake of public justice, because the accessories to such second felony could not be convicted until after the conviction of the principal. Hence followed the rule that a plea of *autrefoit attaint* was never good but when a second trial would be superfluous. (4 Sharsw. Blackst. 336.)

It is well known that many of the convicts are employed outside the prison walls, in the public streets. Should one of them, while thus employed, kill an innocent citizen passing by, will it be for a moment contended that he could not be punished for the last great offense? The denial of this would be so startling as to shock the moral sense. And yet the person of the convict is just as much under the protection of the law as that of the purest citizen, and he is alike shielded from violence and injury. In any aspect or view of the case I can see nothing to prevent a convict in the penitentiary from being prosecuted or punished for the commission of a crime while he is serving out his sentence. I think, therefore, that the court had full jurisdiction and proceeded regularly.

The next objection is that the verdict is against the weight of the testimony. I have examined the record with care, and wholly fail to concur in this assumption. There was no doubt about the killing. That was proved beyond all dispute, and the defense was placed entirely upon the ground of insanity. The evidence,

Ex parte Page.

m my judgment, preponderates greatly in favor of the verdict. Were it otherwise we would not interfere, unless the evidence was so strong against the verdict as to show that it was manifestly wrong and unjust. But in this case there is nothing to review so far as the evidence is concerned, for its weight is decidedly in favor of the verdict.

The instructions, all taken together, leave the plaintiff in error no reason for complaint. The fourth instruction given for the State might have been a little more intelligible, but it is mainly copied from what was sanctioned by this court in Baldwin's case, 12 Mo. 223, and the entire series given for the prisoner were so exceedingly favorable to him that there can be no pretense of injustice or unfairness.

Upon the whole he had a fair trial. The record shows that he committed a most brutal murder, and justice requires that the law should be faithfully carried out.

Judgment affirmed. The other judges concur.