THE STATE v. HART, *Appellant.*

1. **Criminal Law :** GRAND JURY: SHERIFF. It is no ground of exception in a criminal case that the grand jury, by which the defendant was indicted, was not selected in the manner prescribed by law; nor, that the record fails to show that the sheriff and his deputies took the prescribed oath before summoning the grand jury.

2. **The Probate and Common Pleas Court of Greene County** was not abolished by the constitution of 1875.

3. **Criminal Law :** EVIDENCE. Upon the trial of a criminal case. proof that, since the finding of the indictment, defendant was ar-

rested in a distant State on another indictment, and that he attempted to escape, is inadmissible.

For the purpose of showing that he has attempted to avoid the prosecution, the indictment, on which · he is being tried, may be read in evidence, in connection with proof that he has previously forfeited his recognizance and left the State. But the court should instruct the jury that it is admissible as evidence for this purpose only, and should not leave them to infer that in determining the guilt or innocence of defendant, they have a right to consider the fact that the grand jury has indicted him for the crime.

4. ———: ———. Upon a trial for a felonious assault, evidence that the person alleged to have been assaulted by defendant, was on the same day assaulted by others, and was subsequently killed, is inadmissible.

*Appeal from Webster Circuit Court.*—Hon. W. F. Geiger, Judge

*Indictment for a Felonious Assault.*

It appeared from the evidence adduced at the trial, that on the 14th day of March, A. D. 1873, one George W. Davis and the appellant were both in the town of Billings, a small town in the northwestern portion of Christian county, attending the preliminary examination of certain parties charged with an assault upon Davis. This was on Friday, and the assault on Davis had been made on the Sunday preceding, during which he was shot through the right arm, which he was then carrying in a sling. Davis was sitting on a box in front of a store, when he saw Hart, and remarked that he, Hart, was at the bottom of all this devilment, or words to that effect. Hart replied by saying, that Davis was a d—d liar. Hart thereupon drew his revolver from its scabbard, and pointing it at Davis, snapped it, but it did not discharge. The witnesses differ as to whether Davis had drawn his pistol prior to this time or not. Some of the witnesses state that Davis then drew his revolver, and that the appellant snapped his twice more at Davis. Both of the parties were then arrested and dis-

armed. The defendant's revolver was afterwards restored to him.

The State also offered the indictment, recognizance of defendant and order of record forfeiting the same, and to show by one Langston that he had found him in Texas after a long search, and brought him back. This was objected to, but was admitted.

*C. B. McAfee* for appellant.

1. The point made in arrest of judgment is that the record shows on its face that the law of 1873, (that had repealed all other statutes on the subject,) was wholly disregarded in organizing the pretended grand jury, and the decisions of our courts, on this subject, are not applicable, for there was no grand jury to challenge; the judge had no authority to make the pretended organization. It does not appear from the record that the sheriff had qualified, by taking the necessary oath, before he selected the pretended grand jury.

2. The probate and common pleas court of Greene county, was abolished by the adoption of the new constitution, and it had no jurisdiction to make any orders in this case.

3. I suppose that perhaps this is the first time in the history of criminal practice in this country, that it has been held that the indictment is competent evidence to prove defendant's guilt on an issue made by the plea of not guilty; and it will not answer to say that defendant was not injured by this testimony, because the State has had the benefit of it, and has the ruling of the court in presence of the jury, that it is competent evidence, and is in this matter also estopped from saying that it did not have the effect intended. Besides the average juror is constitutionally prone to the belief that the mere fact of indictment of an individual is *prima facie* evidence of guilt.

4. The testimony of the witness Sullivan was incompetent; because, if defendant was not implicated in the

night shooting, then all testimony concerning the same was improper and calculated to prejudice defendant. If he was charged with these other assaults also, then it was improper testimony, because he was on trial for a different and separate assault. There is but one count in the indictment.

*J. L. Smith*, Attorney-General, for the State.

1. The testimony shows that Davis and Hart entertained very bitter feelings towards each other, and that various altercations had taken place between them previous to this time, and that on Sunday prior he had been assaulted and shot through the arm, and that he wore his right arm in a sling on the day of the assault in this case. Having in view all these facts, it clearly appears that this evidence was not only admissible, but imperatively necessary to properly inform the jury of the relations that existed between the parties, and as a circumstance tending to show that Hart made the " assault with design and intent, him, the said George W. Davis, then and there, willfully and feloniously to kill and murder." For the same reasons was the evidence of the assault upon Davis in the night of the same day, admissible. It was also a part of the *res gestae.* All the proceedings at Billings on that day were part of the same assault, and all the circumstances of that day's proceedings were part of the *res gestae.*

2. The objections to the evidence as to defendant's flight to Texas were properly overruled. It is well settled that when a person stands charged with a crime, and he seeks to escape a trial by flight, the evidence of such flight is competent as a circumstance tending to show his guilt. The objection, that the defendant fled for the reason that he was indicted for the murder of Davis, is disposed of by the twelfth instruction, given at his request, which told the jury " that although they might believe from the evidence that defendant forfeited his bond for

appearance for trial in the Greene circuit court, on the charge for which he is now on trial, and was subsequently found in Texas, and brought back, and attempted to escape from the witness Langston; if they believe that such absence in Texas, and failure to appear, and attempt to escape was not on account of the present charge, now on trial, and was not to avoid trial on the same, then such facts are no evidence of guilt in this case."

3. The second ground of the motion in arrest of judgment, is that "the indictment was not returned by a legally constituted grand jury as required by law." The April term, 1873, of the circuit court of Christian county, at which this indictment was found, convened on the third Monday in April of that year, (See Acts of 1873, page 40), which was on the 23rd day of that month. Prior to March 15, 1873, the grand jurors throughout the State were selected and summoned by the sheriffs of the respective counties. 1 W. S., page 798, § 8. On said March 15, 1873, an act was approved to take effect, from and after its passage, providing that grand jurors should be selected by the county courts, thirty days before the commencement of the circuit court, &c., (Acts of 1873, page 46). When the circuit court of Christian county met in April, 1873, it appearing that the county court had failed to comply with this act, it ordered the sheriff to summon eighteen competent grand jurors. This was done, and the men so summoned were duly sworn, charged and empanneled, and returned, among others, the indictment herein. No objections were made to the grand jury until after the trial, and it was then too late. Wag. Stat., 797, § 3; 1081, § 2; 1081, § 3; State v. Bleekley, 18 Mo. 428.

HENRY, J.—The defendant was indicted at the April term, 1873, of the Christian circuit court, for a felonious assault upon one George W. Davis. The cause was taken on a change of venue to the Greene circuit court, thence to the probate and common pleas court of Greene

county, and thence to the circuit court of Webster county, in which, at the March term, 1877, there was a trial resulting in the conviction of defendant. After unsuccessful motions made by him for a new trial, and in arrest of judgment, he appealed to this court.

The term of the Christian court, at which defendant was indicted, commenced on the 21st day of April, 1873, and the county court of that county having failed to select a grand and petit jury in the manner provided by the act of the General Assembly, approved March 15th, 1873, the court ordered the sheriff to summon a grand and petit jury, and by the grand jury so summoned, this indictment was preferred.

1. CRIMINAL LAW: grand jury: sheriff

Defendant contends that the grand jury so summoned was not a legally constituted grand jury. If it were a question now for the first time submitted to this court, I should hesitate to say that a grand jury selected in a manner directly contrary to that expressly prescribed by the act of the General Assembly, was to be recognized as such, but in the case of *The State v. Bleekley*, 18 Mo. 429, in which this question was before the court, it was held that the defendant, indicted by a grand jury selected in contravention of an express statutory enactment, could not object to the composition or organization of the grand jury, and that case has either been followed or approved in the *State v. Petts*, 58 Mo. 557; *State v. Breen*, 59 Mo. 413; *State v. Jones*, 61 Mo. 373; *State v. Connell*, 49 Mo. 282. The same cases also determine that the failure of the record to show that the sheriff and his deputies took the prescribed oath, will not avail the defendant as a ground for arresting the judgment.

The Probate and Common Pleas Court of Greene county was not abolished by the new constitution adopted in 1875; and by an act approved March 4, 1869, jurisdiction was conferred upon that court to try any civil or criminal cause which the circuit judge of said county was disqual-

2. THE PROBATE & COMMON PLEAS COURT OF GREENE COUNTY was not abolished by the constitution of 1875.

ified from trying, and provision was made for the transference of such causes from the circuit court to the Probate and Common Pleas Court of Greene county.    Having been transferred from the Greene circuit court to said Probate and Common Pleas Court, and sent by the latter court, on change of venue, to the Webster circuit court, that court acquired jurisdiction of the cause.  This disposes of defendant's objections to the grand jury, the failure of the record to show the oath taken by the sheriff and deputies, and to the jurisdiction of the Webster circuit court.

There was an irreconcilable conflict of testimony on the trial.    The evidence for the State established an unpro-

3. CRIMINAL LAW: evidence.

voked assault with intent to kill.    That for the accused, by an equal number of witnesses, a clear case of self-defense.  The State's evidence all tended to show that Davis, the party assaulted, accused defendant of having instigated an assault made upon him several days before, and that defendant gave Davis the d—d lie and simultaneously drew a revolver, pointed it toward defendant and snapped two caps at him.    The evidence for the defense was that Davis made the accusation and then commenced drawing his revolver, and that defendant did not attempt to shoot until Davis had drawn his pistol.

There was abundant evidence of threats made by Davis that he intended to kill the defendant, brought down to the very day that this difficulty occurred, and communicated to the defendant both before and on the day of the difficulty.    The court, against the objection of defendant, admitted the evidence of R. H. Langston, that in 1875, in Texas, he arrested the defendant on an indictment in another case, and that he attempted to escape.    The record does not disclose what case that was, but the evidence of Langston was that it was not the case we are considering, and that he was tried and acquitted of the charge for which he was arrested in Texas.

The record does show that defendant forfeited a recognizance for his appearance in this case, but that was

the only evidence which tended to show that he had made any attempt to avoid this prosecution. The court permitted the State to read the indictment herein as evidence to the jury, in connection with the evidence of Langston and of the forfeiture of the recognizance. It is clear, that the evidence of Langston, of the arrest of defendant in Texas, on another charge, and his attempt to escape, was inadmissible, and that under the circumstances, the court should have explained to the jury the object of introducing as evidence the indictment againt the defendant. It was admissible to show that when he forfeited his recognizance and left the State, an indictment was pending against him. It was competent for that and for no other purpose, and the jury should have been so informed by the court. The privilege of reading the indictment to the jury in the statement of the case, is accorded to the State. We do not know that the right to do so has ever been questioned, and presume from the prevalence of the practice, that in stating this case, the indictment was read to the jury.

It may be asked how, then, could reading the indictment again to the jury have prejudiced the defendant. The reading of the indictment by the attorney in his statement, would not have the weight and significance which would attach to it, when, with the sanction of the court, read as evidence in the cause. Whatever is read or admitted to the jury as evidence, is for their consideration as such in determining the issues they are trying, and when the court permitted the State to read the indictment as evidence, without any limitation to its application, or any explanation of the purpose for which it was introduced, the jury may have taken it as an intimation from the court that in determining the guilt or innocence of the accused, they had a right to consider the fact that the grand jury had indicted him for the crime.

We cannot say that defendant was not injured by the evidence of Langston, and the reading of the indictment to the jury, without any qualification. The case was very

evenly balanced on the evidence, and the testimony thus admitted, may have turned the scale against the defendant.

The evidence of Henry Sullivan in regard to a difficulty between Davis and other parties than defendant, on the evening of the day of the difficulty between Davis and defendant, was incompetent, and should have been excluded, and evidence of the same character is to be found in the testimony of several of the witnesses for the State. The 14th instruction asked by defendant should, therefore, have been given. It asked the court to declare that in determining the guilt or innocence of defendant, the jury should be governed by the evidence alone, and not be influenced by the consideration that Davis was assaulted at other times, before or after the difficulty they were then investigating, or that Davis was subsequently killed. The evidence before alluded to having been admitted, this instruction should have been given, although it may be questioned whether it would have cured the error of admitting such evidence.

In other respects we think that the instructions, though not faultless, are not so defective as to warrant a reversal of the judgment; but for the errors above indicated, the judgment is reversed and the cause remanded. All concur.

REVERSED.