## THE STATE v. REED, Appellant.

### Division Two, May 7, 1901.

1. **Murder, First Degree:** FAILURE TO INSTRUCT ON SECOND DEGREE: NO ERROR. Where accused, after making threats to kill his wife, with whom he was not living, induced her to meet him, by some deception, and shot her, and thereafter admitted the killing, a refusal to instruct on murder in the second degree was not error.

2. **Grand Jury:** NOT LEGALLY CONSTITUTED: NO GROUND FOR CHALLENGE TO ARRAY. A challenge to the grand jury on the ground that it was not legally constituted, is properly overruled; it not being one of the grounds mentioned for challenge to the array, under Revised Statutes 1899, section 2487.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins,* Judge.

AFFIRMED.

*Harris & McCawley* for appellant.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Atttorney-General for the State.

(1)   The trial court had authority to order a special grand jury.   State v. Harris, 73 Mo. 287; State v. Cunningham, 130 Mo. 507.   Defendant failed to raise the objection as to the legality of the grand jury until after verdict.   Having failed to bring it to the attention of the court before "verdict found" he will be held as having waived whatever defect there may be so far as his statutory right is considered.   State v. Harris, supra.   (2)   Where the facts of the case show that the crime is either murder in the first degree or nothing, no instruction as to murder in the second degree should be given. State v. Cochran, 147 Mo. 504.   The evidence must justify an instruction on a lower grade of crime, else the trial court should not give it.   State v. Baker, 146 Mo. 379.

SHERWOOD, P. J.—Ernest Reed, a negro, was convicted of murder in the first degree, by shooting his wife Amanda, with a revolver, once through the thigh, and twice through the back, as she endeavored to escape from him, from which wounds she died the next day.

The parties had not been living together for some time, the wife staying at Wyatt's, and working there, to which place defendant would occasionally resort, in order to get the woman's wages, as fast as they accrued each week; he did this in order to gamble on the money.   For a while she gave him some money; but after that she ceased to do so, and he threatened to kill her unless she did.

He also threatened to take her life if she didn't live with him.   He took dinner at Wyatt's on Sunday, when he re-

peated that threat, and on the Tuesday next following, he carried that threat into execution. It is in evidence that sometime in the afternoon of the day of the shooting, defendant sent his brother to Wyatt's to get Amanda to meet him at the Frisco depot. By some deception practiced upon her, Amanda was induced to comply with the defendant's request, who, on his part, went to the *rendezvous* armed with the pistol, which he obtained from French's and used it in accordance with his previous threats.

Amanda, fully conscious of impending death, and a little while before it occurred, made and signed this *ante mortem* statement: "My name is Amanda Gertrude Reed. I am the wife of Ernest Reed. I met Ernest at the depot and he said, 'Let's go to Mrs. Coker's and meet them.' When we got by the hide house on the railroad he began to accuse me of being thick with Mr. Sims, who works at the brickyard; he said I wouldn't go to church or go up town with him; that I was ashamed to be seen with him and that he had to tell a lie to get me away from the house where I am now. I began to cry and he held firmer to me and took out his revolver and shot me in the right leg, and I fell to my knees and I then got away and started to run and he shot again and missed me, and he then shot me twice more in the back; his brother, Ben Reed, induced me to go to the depot before I was shot by telling me his brother, Bud Reed, and his cousin, Annie Wharton, were there about to go away and wanted to see me. I make this statement in the knowledge that my death is certain and near and that I have but a short time to live.

"MRS. AMANDA REED."

Signed in pencil and the following words in pencil: "This is my testimony; he shot me on purpose."

Just after the shooting, defendant encountered Emerson, and after some inquiries said: "I have got one of them; I

will get the other." Being pressed for his meaning, said he had shot his wife, down by the depot. Then he asked witness to loan him half a dollar, to get out of town; and failing to obtain the loan, said he would get out some way; that he had to get out of town.

When shortly after this, defendant was arrested by Hurst and Campbell, policemen, he said to the former in reply to why he had done the act in question, "he had made up his mind he had rather kill her than have her live with some one else; he had made up his mind to kill her." Speaking to Campbell as they walked over to the prison, defendant admitted the shooting. He said, "I shot her; I didn't get the one I wanted, though." He said further that, "he had rather kill her than have her live with some one else."

Testifying in his own behalf, defendant said: "I am the defendant in this case. On or about the twentieth day of June last, I sent for my wife Gertrude Reed to meet me at the Frisco depot. She had requested me to send for her. She was staying at Mrs. Wyatt's at the time and she told me Mrs. Wyatt did not want me to come down there and didn't like to have me around, and I wanted to see her, so I went to the depot to meet her. From the depot we went walking. The last night I was down at Mrs. Wyatt's my wife told me to bring a photograph that I had of her, that she wanted to give it to a friend; so our conversation was about the photograph. We were on friendly terms at that time. She asked me as soon as we locked arms if I brought the photograph, and I told her that I did, and she insisted on me giving it to her, and I asked her who she wanted to give it to before I let her have it, and she said she wanted to give it to a friend, but she wouldn't tell me who, and got mad and snatched it out of my hand and said she wanted to give it to Mr. Sims. I asked her which Sims, because I thought it was the preacher Sims; and if it had

been him I would have let her have it, and she said Sims that stayed at Mrs. Wyatt's, as he had been paying her board, and she wanted to give him her photograph as he wanted it, and she took it out of my hand and I shot her before I knew what I was doing. I had the gun when I went to the depot. I got it up at French's."

This is the substance of the evidence. The instructions given by the court of its own motion, were such as are usually given in respect to murder in the first degree.

Defendant asked for, and the court refused, an instruction on murder in the second degree, which refusal caused an exception, and this is the only ground raised in the motion for a new trial. We see nothing in the evidence of defendant or in that of others to warrant such an instruction; consequently, there was no error in its refusal. Every circumstance in evidence shows a case of deliberate murder.

The motion in arrest raises these points:

"That the indictment does not charge any offense known to the laws of this State.

"That the verdict of the jury is insufficient.

"That the grand jury that preferred and returned the indictment into court was not a legally constituted grand jury and had no legal authority to find and return said indictment. That said term of court was not one at which a regular grand jury could be impanelled; that said grand jury was not a special grand jury as provided by law." .

The indictment is very well drawn. The verdict is just such an one as required by section 1817, U. R. S., and approved in State v. Meyers, 99 Mo. 107, and other cases.

The statement in the motion that the grand jury that preferred the indictment was not legally constituted, does not prove itself. Besides, the statute forbids any challenge to the array of grand jurors, or to any person summoned as a

grand juror in any cases other than those that are mentioned in section 2487, U. R. S. 1899. [State v. Welch, 33 Mo. 33; State v. Brown, 64 Mo. 367; State v. Bleekley, 18 Mo. 428; State v. Connell, 49 Mo. 282; State v. Holcomb, 86 Mo. 371.]

Finding no error in the record, we affirm the judgment and direct that the sentence pronounced by the trial court be executed. All concur.