## CHARLES H. STEFFEY, Incorporated,

## *vs.*

## JOHN S. BRIDGES.

*Government Contract—Commissions—Public Policy.*

In an action by a broker to recover commissions for procuring the United States Post office Department as a tenant for defendant's property under a lease, *held* that, in view of the Postal Regulations, adopted August 30th, 1918, forbidding agreements to pay brokerage on contracts with such department, and the general policy of the law against compensation for procuring government contracts, plaintiff could not recover.

*Decided January 27th, 1922.*

Appeal from the Baltimore City Court (SOPER, C. J.).

Action by Charles H. Steffey, Incorporated, against John S. Bridges. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT. JJ.

*George M. Brady* and *Roger Howell,* with whom were *Maloy, Brady, Howell & Yost* on the brief, for the appellant.

*Randolph Barton, Jr.,* and *Malcolm M. Lauchheimer,* with whom was *Forrest Bramble* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a suit at law, brought by Charles H. Steffey, Incorporated, plaintiff, a real estate company, against John S.

Bridges, defendant, in the Baltimore City Court, to recover certain commissions alleged to be due and owing the plaintiff for services rendered in securing and procuring a tenant for certain property belonging to the defendant, and situate at Maryland Avenue and Oliver Street, Baltimore City.

The questions for our review arise upon the pleadings, and are presented by the rulings of the court in sustaining the defendant's demurrer to the plaintiff's amended declaration, with leave to amend.

The plaintiff declined to amend and, from a judgment on the demurrer for the defendant for costs, the plaintiff has taken this appeal.

The amended declaration contains the six common counts in assumpsit and the seventh, a special count, containing and setting forth the special fact relied upon by the plaintiff to secure a recovery in the case.

As the facts of the case, upon which the decision must turn, appear from the pleadings, the seventh special count, and the bill of particulars, annexed to the amended declaration, will be here set out and stated somewhat at length.

By the seventh count of the amended declaration, after stating that the plaintiff secured for the defendant a tenant, it is averred that, "on or about April 23rd, 1919, the Post Office Department accepted a proposal by the defendant to lease a garage for the use of the Post Office Department situated on the defendant's premises aforesaid, for the term of ten years, the lease to run from the date of occupancy of such garage, which was to be erected by the defendant; that at the date of filing this amended declaration, the said garage has been occupied by the Post Office Department of the United States Government since July 1st, 1920, and the formal lease, running from July 1st, 1920, has either been executed, or is ready for execution awaiting the signature of the defendant; that under the terms of the lease, being the terms agreed upon between the defendant and the Post Office Department prior to the institution of this suit, the amount which the tenant promises to pay to the defendant is fifteen

thousand dollars a year, and the term of the tenancy is ten years from the date of occupancy of the premises to wit, July 1st, 1920; that the established and customary commissions for such services are five per cent of the first year's rental and one per cent. of the rental for each year, exclusive of the rental for the first and second year, as was well known to the defendant; that there is due and owing to the plaintiff from the defendant the sum of seven hundred and fifty dollars plus eight times one hundred and fifty dollars, viz.: twelve hundred and fifty dollars, or in all nineteen hundred and fifty dollars; that notwithstanding the defendant's promise and the services rendered by the plaintiff to the defendant, and notwithstanding a demand by the plaintiff made of the defendant for the payment of this sum, the defendant has failed and refused to pay it, or any part thereof, and that there is justly due and owing from the defendant to the plaintiff the sum of nineteen hundred and fifty dollars, with interest" thereon.

The bill of particulars filed with the declaration sets out the following cause of action:

"To amount due for services rendered in aiding and securing lease and commissions due for lease of the premises situated at Maryland Avenue and Oliver Streets at the rental of Fifteen Thousand Dollars ($15,000) a year for a term of ten years from date of occupancy, by the defendant to the Post Office Department of the United States Government at the established and customary commissions for such services of 5% on the first year's rental and 1% of the rental for each year thereafter, exclusive of the rental for the first and second years; the plaintiff having been engaged and the services having been begun by the plaintiff for the defendant in February, 1919, and a proposal of the defendant's to lease a garage upon terms as above mentioned to the Post Office Department having been made by the defendant subsequent to February, 1919, and accepted by the Post Office Department on or about April 23rd, 1919, the de-

fendant to erect the garage thereafter to be occupied
and the terms of the lease to run from date of occu-
pancy, to wit, July 1, 1920, $1,950.00."

The demurrer was to the whole amended declaration, and
stated that the declaration and the several counts thereof were
bad in substance, and insufficient in law, and, as stated, the
demurrer was sustained and a judgment on the demurrer in
favor of the defendant was entered by the court below.

In support of the demurrer, it is contended that the con-
tract set up by the plaintiff was not only illegal and against
public policy, but it was directly in contravention of the
Postal Laws and Regulations of the Post Office Department
of the United States, in force at the time of the contract de-
clared upon between the plaintiff and defendant.

By an agreement between the parties, filed in the case, it
is stipulated that section 56½, Postal Laws and Regulations
of the United States, as adopted August 30th, 1918, reads as
follows:

"All contracts entered into by the Post Office De-
partment shall contain the following covenant:

"The contractor expressly warrants that he has em-
ployed no third person to solicit or obtain this con-
tract in his behalf, or to cause or procure the same to
be obtained upon compensation in any way contin-
gent, in whole or in part, upon such procurement;
and that he has not paid or promised or agreed to
pay, to any third person, in consideration of such pro-
curement, or in compensation for services in connec-
tion therewith, any brokerage, commission, or per-
centage upon the amount receivable by him hereunder;
and that he has not, in estimating the contract price
demanded by him, included any sum by reason of any
such brokerage, commission or percentage; and that
all money payable to him hereunder is free from obli-
gation to any other person for services rendered or
supposed to be have been rendered, in the procure-
ment of this contract. He further agrees that any

breach of this warranty shall constitute adequate cause
for the annulment of this contract by the United
States, and that the United States may retain to its
own use from any sums due or to become due there-
under an amount equal to any brokerage, commission,
or percentage so paid or agreed to be paid."

That on October 6, 1919, it was added to as follows:
"Provided, however, that this covenant does not ap-
ply to contracts for the sale or rental of real estate
made by or through a *bona fide,* established and rec-
ognized real estate agency."

That on December 4, 1919, it was changed to read as fol-
lows:
"Provided, however, it is understood that this cove-
nant does not apply to the selling of goods through a
*bona fide* commercial representative employed by the
contractor in the regular course of his business in
dealing with customers other than the government
and whose compensation is paid, in whole or in part,
by commission on sales made, nor to the selling of
goods through established commercial or selling agents
or agencies regularly engaged in selling such goods,
nor in contracts for the sale or rental of real estate
made by or through a *bona fide* established and rec-
ognized real estate agency."

The demurrer, it will be seen, was to the whole declara-
tion, and the controlling question presented thereby is
whether the contract relied upon by the plaintiff was illegal
and against public policy, because in contravention of sec-
tion 56½, Postal Laws and Regulations of the United
States.

The contract is alleged to have been made in February,
1919, and the lease was accepted by the Government on or
about April 23rd, 1919. The services were, therefore, ren-
dered and the contract accepted during the time when the
Postal Laws and Regulations of August 30, 1918, were in

force, and when such contracts were forbidden by the department regulations.

By the postal regulations, as adopted August 30, 1918, it was provided that all contracts entered into by the Post Office Department should contain the covenants stated in the regulations, set out hereby and, in substance, making such contracts as here stated illegal and against public policy. These regulations, it will be seen, were repealed and modified after the contract in this case was made, to wit, on the 6th day of October, 1919, and on the 4th of December, 1919, and all contracts for the sale or rental of real estate made by or through a *bona fide* established and recognized real estate agency were excepted from the original regulations.

The validity of the contract, therefore, must be determined by the postal laws in existence at the time it was made, and not by the subsequent modifications or changes thereof.

In 9 *Cyc.,* 576, it is said that if an agreement was illegal by statute or on grounds of public policy when it was made, it is not rendered legal by repeal of the statute or a subsequent change of the public or legislative policy. *Schaun* v. *Brandt,* 116 Md. 566; *Stewart* v. *Thayer,* 168 Mass. 519; *Rich* v. *Keyser,* 54 Pa. St. 86; *Baltimore* v. *Cahill,* 126 Md. 604; *Smith* v. *State,* 66 Mo. 215; *Brager* v. *Bigham,* 127 Md. 159.

The object and meaning of the postal regulation of the 30th of August, 1918, is clear and free from obscurity. It was a war measure, and was intended to exclude real estate brokers from Government transactions, as stated in the order and regulation. The subsequent amendments of October 6th, 1919, and of December 4th, 1919, adopted by the Postmaster General, with the approval of the President of the United States, can by no proper construction be urged as a reason to aid or relieve the appellant in this case from the effect of the original order.

As said by Mr. Justice Miller, in *United States* v. *Lee,* 106 U. S. 196: "No officer of the law may set that law at defiance with impunity. All the officers of the Govern-

ment, from the highest to the lowest, are creatures of that law, and are bound to obey it."

We think this case falls within the reasoning of the case of *Providence Tool Co.* v. *Norris,* 2 Wall. (U. S.), 54, wherein the Supreme Court of the United States held such contracts to be illegal and against public policy. MR. JUSTICE FIELD, in delivering the opinion, said: "The question, then, is this: Can an agreement for compensation to procure a contract from the Government to furnish its supplies be enforced by the courts? We have no hesitation in answering the question in the negative. All contracts for supplies should be made with those, and with those only, who will execute them most faithfully, and at the least expense to the Government. Considerations as to the most efficient and economical mode of meeting the public wants should alone control, in this respect, the action of every department of the Government. No other consideration can lawfully enter into the transaction, so far as the Government is concerned. Such is the rule of public policy; and whatever tends to introduce any other elements into the transaction, is against public policy. That agreements, like the one under consideration, have this tendency, is manifest. They tend to introduce personal solicitation and personal influence, as elements in the procurement of contracts; and thus directly lead to inefficiency in the public service, and to unnecessary expenditures of the public funds. * * *

"There is no real difference in principle between agreements to procure favors from legislative bodies, and agreements to procure favors in the shape of contracts from the heads of departments. The introduction of elements to control the action of both is the direct and inevitable result of all such arrangements. *Marshall* v. *B. & O. R. R. Co.,* 16 How. 314; *Harris* v. *Roof,* 10 Barb. 489; *Fuller* v. *Dame.* 18 Pick. 472."

It was further said that: "Other agreements of an analogous character might be mentioned, which the courts, for the same or similar reasons, refuse to uphold. It is unnec-

essary to state them particularly; it is sufficient to observe generally that all agreements for pecuniary considerations to control the business operations of the Government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements; and it closes the door to temptation by refusing them recognition in any of the courts of the country." *Trist* v. *Child,* 21 Wallace, 441; *Crocker* v. *United States,* 240 U. S. 74.

As we concur in the conclusion of the court below in sustaining the demurrer to the declaration, it follows, for the reasons stated, that the judgment on the demurrer in favor of the defendant for costs must be affirmed.

*Judgment affirmed, with costs.*