## In re PRINGLE ENGINEERING & MFG. CO.

### SNAKARD v. KENNEDY.

No. 9358.

Circuit Court of Appeals, Seventh Circuit.
Nov. 5, 1947.

Victor G. Nardi, of Chicago, Ill., for appellant.

Michael Gesas and James G. Culbertson, both of Chicago, Ill. (Oswell G. Treadway, of Chicago, Ill., of counsel), for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Appellant Snakard filed a claim against the bankrupt alleging that it was indebted to him in the sum of $14,180.62.[1] After a hearing before a referee in bankruptcy, the claim was disallowed. Upon review of the order entered by the referee, the District Court ordered that the order be approved and the claim of Snakard be denied. This appeal is to reverse that order.

In his claim, Snakard alleged that he was employed by the bankrupt on November 6, 1944 as sales manager; that pursuant to a verbal contract he was to receive a salary of $100 per week to be paid from the current payroll, plus 3% of all sales over $250,000 and under $500,000, plus 2% of all sales over $500,000 and under $750,000, and 1% of all sales over $750,000 made by the bankrupt, to be figured and paid at the end of the year; that he was to receive two weeks' vacation with pay and reimbursement for any expenses incurred in connection with company business; that the corporation was declared bankrupt on October 9, 1945; that he was paid his salary to and including September 29, 1945; that he was reimbursed for expenses advanced to and including September 15, 1945; that the sales made by the corporation from date of employment until date of bankruptcy were in excess of $750,000; and that he failed to receive any payment on the percentage of sales agreement with the bankrupt. Itemized, the claim was listed as follows:

| | |
|---|---:|
| Unpaid salary to October 12, 1945 | $ 166.68 |
| Expenses advanced to October 6, 1945 | 213.94 |
| Commissions due not less than.. | 13,500.00 |
| Vacation pay | 200.00 |
| | $14,080.62 |

While not the first item listed, the claim for commissions comprises the bulk of claimant's case. It, therefore, will be considered first. It appears there is no factual dispute over the existence of an employment contract between Snakard and the bankrupt. The sole question to be considered in this regard is whether all the terms of the contract were valid under the law existing at the time. Upon application by the bankrupt to the Salary Stabilization Unit of the Bureau of Internal Revenue for approval of the compensation to be

---

[1] In his brief claimant concedes that his claim for unpaid salary is overvalued by $100 and the total should have been $14,-080.62.

paid claimant, the Commissioner approved the compensation agreement in part. He approved the salary request for $5,200 per year and the creation of an annual vacation with two weeks' pay. The controversy rages, however, as to what the Commissioner meant when he said:

"No action has been taken with respect to your request for proposed bonus arrangements. When bonus payments are to be made, applications for approval should be filed with this office."

There is no question that the salary agreement between claimant and the bankrupt was subject to a review by the Commissioner under the regulations promulgated pursuant to the Stabilization Act of 1942, 50 U.S.C.A.Appendix, § 961 et seq. The bankrupt recognized this when it submitted its request for claimant's salary and bonus to the Salary Stabilization Unit. Upon consideration of the Commissioner's language, it is obvious that the request for bonus was neither granted nor refused, but that is not enough. We must evaluate the effect of the Commissioner's language upon the agreement between the parties.

To the appellant the effect of the Commissioner's language means that action on the request was deferred until the end of the first twelve-month period, and as Executive Order 9599, 50 U.S.C.A.Appendix, § 1651 note. 10 Fed.Reg. 10155, was issued by the President on August 18, 1945, releasing salaries from federal control, there was no further need to get anyone's approval for the bonus agreement. To the appellee the effect of the Commissioner's language connotes that the only contract existing between the claimant and the bankrupt was that approved by the Commissioner and that any bonus arrangements not approved were necessarily illegal and void.

The referee in holding for the trustee concluded that the proposed bonus arrangements were unlawful, presumably because no action was taken on them at the time of the request.

■ It is clear that an order of a referee affirmed by the District Court will not be set aside unless clearly erroneous. In

re Newman, 6 Cir., 94 F.2d 108. If we examine the Commissioner's language negatively as to what he did not approve, it is unquestioned that the bonus was never approved by him while the terms of the Act controlled salaries. Whether the Commissioner would have approved the bonus agreement at the end of the employment year had he the authority is too remote for even speculation. When the salary controls were lifted on August 18, 1945, the bankrupt had less than two months of corporate life remaining.

■■ No contention is made, nor could it be made, that the bankrupt had sold more than $250,000 worth of goods in the two months before its demise. (Under the proposed agreement the bankrupt had to sell more than $250,000 worth of goods before any bonus distribution could take place.) On the contrary, the bonus plan not being in effect while the Stabilization Act controlled salaries, it could not rise phoenix-like out of the ashes of the revocation of the salary clause, because it is a general rule that the terms of a contract must be determined by the law in effect when the contract is made. Hannay v. Eve, 3 Cranch 242, 2 L.Ed. 427; Steffey, Inc. v. Bridges, 140 Md. 429, 117 A. 887. The proposed bonus, moreover, was in derogation of the spirit as well as the purpose of the Act, namely, "In order to aid in the effective prosecution of the war, the President is authorized * * * to issue a general order stabilizing prices, wages, and salaries * * *." 50 U.S.C.A.Appendix, § 961. Any bonus agreement between the parties then was illegal, and the referee properly held the agreement not binding on the bankrupt.

In the schedules filed by the bankrupt, claimant was listed as a creditor-employee to whom the bankrupt owed $166.68 for unpaid earnings and $100 for one week's vacation credit. Plaintiff's only quarrel with this record is that he is entitled to a vacation credit of two weeks. The referee, relying upon the records of the bankrupt, found that the unpaid balance was $266.68. Despite this, he disallowed the claim in its entirety, because he found as a fact that

claimant as vice-president [2] and director of the bankrupt, prior to the filing of the bankruptcy petition, had taken from the bankrupt certain sample clocks, blue prints of the clocks, and wire and placed them in his residence. Claimant argues that the referee cannot properly set-off these items against his salary and vacation claims, because no evidence was taken to determine their value or ownership.

It is true that the referee did not place an exact value upon the articles removed, but there is ample evidence to support the referee's finding that the articles taken were of a value at least the equal of $266.68. Further, the record, which includes claimant's testimony at the receiver's examination prior to the filing of this claim, shows an almost deliberate abandonment on claimant's part of his duties to bankrupt. Two months prior to the petition in bankruptcy claimant and the president of the bankrupt formed a partnership to manufacture clocks, which they proceeded to do on bankrupt's property and at only an incidental interest to bankrupt. We believe the referee's disallowance of the $266.68 credit was fully justified.

As for the variance between the credit of $200 vacation pay which the plaintiff claims as due him and the $100 found due and disallowed by the referee, the rule is that employees are not entitled to two weeks' vacation with pay if their contract of employment terminates prior to the end of the employment year. In re Public Ledger, Inc., D.C., 63 F.Supp. 1008. Claimant worked for the bankrupt from November 6, 1944 to October 9, 1945. His vacation pay credit, as found by the referee, was correct.

Finally, plaintiff asserts that he expended $213.94 for expenses of the bankrupt from September 15 to October 6, 1945; and that his sworn proof of claim is admitted where the trustee merely objects to the claim and offers no evidence to the contrary. It is a general rule that the claimant in bankruptcy has the burden of proving his claim, Kessler v. Jefferson Storage Corp., 6 Cir., 125 F.2d 108, 112. Moreover, from an examination of the record it is clear that claimant failed to establish a prima facie case as required by the Bankruptcy Act. 11 U.S.C.A. § 93.[3] He did not set forth the claim with other than the allegation of its existence. He failed to recite antecedent facts giving rise to the claim. From the nature of the claim it is clear that claimant should have listed the expenses he incurred in the interest of the bankrupt.

The referee disallowed the claim for expenses, because he found that the Commissioner made no authorization for expenses when he approved claimant's salary. As was true of the alleged commissions due, any agreement, therefore, to pay expenses was illegal, because it was void when made.

Affirmed.

---

[2] Claimant was elected vice-president and a director of the bankrupt corporation on June 15, 1945.

[3] "(a) A proof of claim shall consist of a statement under oath, in writing and signed by a creditor, setting forth the claim; * * * and whether any and, if so, what payments have been made thereon * * *."